[No. 37079.   Department Two.   March 4, 1965.]

APPLIANCE BUYERS CREDIT CORPORATION, *Respondent*, v. RALPH W. UPTON, *et al., Appellants.**

*Reported in 399 P. (2d) 587.

794

*Bennett Hoffman*, for appellants.

*Sweeney & Hunter* (*David C. Hunter*, of counsel), for respondent.

HAMILTON, J.—This is an action, tried to the court, for alleged breach of an agreement in the nature of a continuing guaranty contract. From an adverse judgment, defendants appeal.

At all times concerned, plaintiff (respondent) operated an appliance dealer finance agency and defendants (appellants) owned an electrical appliance retail store. On October 18, 1957, the plaintiff and defendants entered into a contract whereby plaintiff would purchase defendants' commercial paper evidencing retail credit sales of appliances. By the terms of this contract, defendants were obligated to repurchase, on demand, those sales accounts which became delinquent by two installment payments. In conjunction with this contract, the parties also entered into a supplemental agreement which provided for a reserve fund made up of deposits allocated from finance charges as security for defendants' obligation to repurchase delinquent accounts.

Between October 18, 1957, and May 16, 1960, defendants sold to plaintiff some 3,000 conditional sales contracts. During the fall of 1959 and the early part of 1960, defendants' business was stricken with an excessive number of defaulting purchasers. As these purchasers fell behind two or more installments and defied collection efforts, the plaintiff notified defendants and requested that they repurchase such contracts. Defendants repurchased some and others were charged against the reserve fund. As the financial burden increased and the reserve fund decreased, relations between the parties became strained. Each blamed the

mounting crisis upon the business methods of the other. Defendants indicated to plaintiff they were unable to meet plaintiff's repurchase demands. They threatened to go out of business, and on one occasion threw the keys to the store onto a desk in plaintiff's office.

On May 16, 1960, with the tacit accord of defendants, plaintiff removed from defendants' store such new appliances as plaintiff had "floored" for defendants, pursuant to a separate trust receipt arrangement between the parties. Defendants thereafter disconnected their business telephone and closed their store to regular business for about 2 months.

Following the May 16th event, plaintiff, without making further formal repurchase demands upon defendants, expended the reserve fund in an attempt to recoup losses occasioned by defaulting accounts. Upon depletion of the reserve fund, 57 accounts remained for liquidation. Plaintiff, after fruitless collection efforts, repossessed the appliances covered by these accounts, resold them, and applied the proceeds on the accounts. A balance of $10,729.25 remained unpaid, and on June 26, 1961, plaintiff, by registered letter, made formal demand upon defendants for payment of that amount in conformity with the repurchase agreement. Defendants refused, and plaintiff initiated this suit alleging breach of contract. Defendants by amended answer denied any breach, affirmatively alleged waiver and estoppel, and cross-claimed for the amount of the reserve fund expended after May 16, 1960.

Certain discovery and pretrial procedures were pursued by the parties, and the cause came on for trial on September 17, 1962. The hearing was limited to the issue of the existence of the contractual relationship, and was thereafter continued for hearing upon the accounting aspects of the case. Further discovery procedures were undertaken by the parties, and trial resumed on February 4, 1963. At this time defendants moved to amend their answer by adding an affirmative defense of release. Defendants' motion was denied, and the trial proceeded upon the issues as originally framed. At the conclusion of the

trial, the court granted judgment to plaintiff in the sum of $10,529 and dismissed defendants' cross-claim.

On appeal, defendants make 18 assignments of error which, however otherwise stated, reduce themselves to two major contentions: (1) By the terms of the agreement in question, plaintiff was required to make a demand upon defendants before any repurchase obligations accrued subsequent to May 16, 1960; and (2) the trial court erred to defendants' prejudice in denying their motion to amend their answer on February 4, 1963.

The pertinent provisions of the agreement between the parties bearing upon the first contention read:

"We [defendants] propose to sell you [plaintiff] valid conditional sales contracts . . . and other choses in action (herein designated 'Accounts') arising from the bona fide sale or lease and delivery by us of appliances or equipment (herein designated 'Equipment'). In consideration of your purchase of such Accounts . . . , we hereby agree as follows:

" . . .

"6. In the event of default by the Buyer in the payment of any two instalments of an account or in the performance of any requirement imposed on the Buyer therein, we shall repurchase said account from you for cash, on demand, for an amount equal to the unpaid balance of said Account less such proper portion of your purchase charge as you may determine. . . . We do hereby expressly waive notice of acceptance of this agreement, notices of non-payment and non-performance, notices of amount of indebtedness outstanding at any time, protests, demands and prosecution of collection, foreclosures and possessory remedies.

" . . .

"8. If you deem it necessary to repossess Equipment, you may repossess the same, and we will pay you in cash on demand, in addition to the sum above provided for, all reasonable costs of repossession, . . .

"9. . . . So long as any amounts owing on such Accounts by us or any Buyer shall be due and unpaid, or in the event of any breach of this agreement by us any money, Accounts or property of ours which may come into your possession, may be held and later applied by you to any amounts so owing or which later become due,

it being understood that such Accounts or property of ours which you may hold, may be converted into cash by you, the cost of converting same to cash deducted therefrom and the remaining cash applied as aforesaid.

"   . . .

"11. It is agreed that any fund created as security for our performance is to be held as security for and not in lieu of performance by us. You shall have the right, however, immediately upon our failure to perform any obligation of this agreement, to apply said fund, or so much thereof as may be necessary, to satisfy any loss sustained by you by reason of our failure so to perform. . . .

"12. Your failure to exercise a right hereunder shall not operate as a waiver of said right, but all rights hereunder shall continue until all Accounts shall have been fully paid; and all rights and remedies herein provided are cumulative and not alternative."

The evidence adduced at the trial indicates that, prior to May 16, 1960, the parties carried on their repurchase operations under the agreement generally as follows: The plaintiff would forward to defendants each month a "past due list," naming the accounts which were delinquent, with a notation after those accounts where repurchase by defendants was contemplated; if further efforts at collection of any of the accounts so noted failed, plaintiff would then request repurchase thereof, either by letter, telephone call, or personal contact; upon receipt of such a repurchase request, defendants would indicate how much of the unpaid balance on the account or accounts they could pay, and the difference, if any would be charged against the reserve fund.

It would thus appear that, under the language of ¶¶ 6 and 8 of the agreement and the practice of the parties in connection therewith, a demand or request for repurchase of an account was contemplated and intended by the parties before the defendants' obligation to repurchase such account became fixed. It is upon this premise that defendants predicate their first contention, and assert that plaintiff failed to make timely demand upon them, after May 16, 1960, for repurchase of the accounts which are the subject matter of this action.

In determining the issue thus presented, the trial court, in essence, found and concluded from the evidence presented that defendants had by their words and conduct immediately prior to and following May 16, 1960, repudiated their repurchasing obligation under the contract and rendered the service of any demand a useless act. The trial court further concluded that, in any event, the demand letter of June 26, 1961, constituted a sufficient compliance with any contractual requirement therefor.

We agree with the trial court. The evidence is amply clear that prior to the May 16th date defendants, through Mr. Upton, advised plaintiff that they would not meet the increasing repurchase obligations and that if forced by further demands they would close their store and go through bankruptcy. Thereafter, and on May 16th, the evidence further indicates defendants acquiesced in the removal of plaintiff's floored merchandise, closed their store for some 2 months, and did not thereafter renew their relations with plaintiff. Under such circumstances, the applicable rule is stated in Restatement, Contracts § 306, and explained in Comment a thereof, as follows:

"Where failure of a party to a contract to perform a condition or a promise is induced by a manifestation to him by the other party that he cannot or will not substantially perform his own promise or that he doubts whether though able he will do so, the duty of such other party becomes independent of performance of the condition or promise. He has power to nullify his manifestation of unwillingness or inability by retracting it, so long as the former party, in reliance thereon, has not changed his position.

"*Comment*:

"*a*. No man is compelled to do a useless act, and if performance of a condition will not be followed by performance of the promise which is conditional, it is useless for the intended purpose and it is therefore unnecessary to perform the condition. A promisee in judging whether performance of a condition will not be followed by performance of the promise is justified in taking the other party at his word. . . ."

We, like the trial court, conclude that plaintiff was relieved, after May 16, 1960, of making a formal demand upon defendants to repurchase the defaulting accounts, and was entitled to pursue its rights under ¶¶ 8, 9, 11, and 12 of the contract.

Defendants' second contention relates to the trial court's refusal to permit amendment of defendants' answer to include the affirmative defense of release. As heretofore indicated, defendants' motion in this respect was presented to the trial court at the resumption of trial on February 4, 1963. The trial court denied the motion upon the basis that the amendment was not timely proffered and that the ends of justice would not thereby be served.

The basis of defendants' proposed defense of release is a conversation which defendants assert occurred on May 16, 1960, between Mr. Upton and the then manager of plaintiff's branch office. Defendants contend that at that time the manager exonerated them from any liability upon outstanding accounts and stated that plaintiff would look only to the reserve fund.

Pleading-wise, the record reveals that the action was commenced by the filing of the complaint on August 17, 1961. Defendants responded by serving their answer and cross claim on September 6, 1961. Plaintiff answered the cross claim, and thereafter defendants sought and obtained permission from the court to file an amended answer and cross claim, which was served on July 16, 1962, and answered by plaintiff on August 10, 1962. Defendants did not plead release or the agreement giving rise to such defense in either answer, and did not advert to such in response to written interrogatories propounded by plaintiff in August, 1962. Likewise, defendants did not refer to or assert such a contention during the hearing held on September 17, 1962.

The first notice of defendants' contention came to plaintiff during an oral examination of defendant Ralph Upton conducted by plaintiff's counsel on January 23, 1963. Thereafter, on January 25, 1963, plaintiff served notice of its intent to take the deposition of the branch manager in-

volved, who had, since May 16, 1960, moved to California and left plaintiff's employ. Defendants objected to the taking of the proposed deposition because of the shortness of notice and time. The trial court sustained defendants' objection, unless plaintiff acceded to terms involving an extended continuance of the trial or payment of defendants' attorneys' fees. Plaintiff rejected the terms, and thereafter defendants moved to amend their answer, which motion was heard and denied by the trial court on February 4, 1963. Defendants advance no reason for not previously asserting the defense.

■ A motion to amend a pleading after the pleadings have closed is governed by Rule of Pleading, Practice and Procedure 15(a), RCW Vol. 0, and is addressed to the sound discretion of the trial court. The trial court's action in passing upon such a motion will not be disturbed on appeal except for a manifest abuse of discretion or a failure to exercise any discretion. *Foman v. Davis*, 371 U. S. 178, 9 L. Ed. (2d) 222, 83 S. Ct. 227 (1962); *Hendricks v. Hendricks*, 35 Wn. (2d) 139, 211 P. (2d) 715 (1949); 1A Barron & Holtzoff, Federal Practice & Procedure § 445; 3 Moore's Federal Practice § 15.08; 3 Wash. Prac. (Orland) pp. 524, 525.

■ Rule 15(a), *supra*, admonishes that leave to amend shall be freely given when justice so requires, and, accordingly, the rule is to be liberally applied. *Adams v. Allstate Ins. Co.*, 58 Wn. (2d) 659, 364 P. (2d) 804 (1961). Undue delay on the part of the movant in proposing the amendment, where such delay works undue hardship or prejudice upon the opposing party however, constitutes sufficient reason for denial. *Foman v. Davis, supra.*

Under the circumstances present in the instant case, we cannot say the trial court abused its discretion in denying defendants' belated motion.

The judgment is affirmed.

DONWORTH, FINLEY, and OTT, JJ., and CUSHING, J. Pro Tem., concur.