**RALSTON PURINA COMPANY, a corporation, Plaintiff,**

v.

**F. R. McNABB, Defendant.**

**Civ. No. C-73-391.**

United States District Court,
W. D. Tennessee, W. D.

Aug. 19, 1974.

Kemper B. Durand, C. Bradford Foster, III, Rosenfield, Borod, Bogatin & Kremer, P. C., Memphis, Tenn., for plaintiff.

Michael Whitaker, Somerville, Tenn., for defendant.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

In this cause plaintiff, Ralston Purina Company, sues defendant, F. R. McNabb, a West Tennessee farmer, for breach of contract, alleging that McNabb failed to deliver 3,771 bushels of the 8,000 bushels of soybeans due under two contracts entered into by Ralston Purina and McNabb in early September, 1972. The case has been tried before a jury which answered interrogatories. Moreover, the parties stipulated numerous facts and further stipulated that the Court should determine any questions of fact that had not been determined either by the jury in its answer or by the parties in their pretrial stipulations of facts.

The stipulations of the parties establish that Ralston Purina and McNabb entered into two contracts (NS–606 and NS–609) for the November delivery of 5,000 bushels of soybeans at $3.33 per bushel and 3,000 bushels of soybeans at $3.29 per bushel. The contracts were executed in writing by McNabb and incorporated by reference the rules of the Grain & Feed Dealers National Association. McNabb made only one delivery (738.23 bushels) to Ralston Purina prior to the November 30th deadline. Ralston Purina sent and McNabb received one month letters of extension for both contracts for the months of December, January and February. McNabb made seven deliveries in December, three deliveries in January, and one delivery in February for a total of 4,228.53 bushels delivered to Ralston Purina, leaving 771.47 bushels undelivered on contract NS–606 and 3,000 bushels undelivered on contract NS–609. On March 17, 1973 Ralston Purina demanded, and McNabb refused to pay, $11,131.32 (using a March 8th market price, the date Ralston Purina contends that it covered by purchase elsewhere, to calculate damages under T.C.A. § 47–2–713) damages resulting from defendant McNabb's failure to deliver on the contracts. The parties stipulated that during the fall and winter of 1972 there was severe weather—in the form of unusually heavy rains and flooding—in the areas where McNabb conducted his farming operations.

■ Defendant McNabb defends on two grounds: (1) that the severe weather made performance of his contract impossible (T.C.A. § 47–2–615) and (2) in the alternative, any damages (T.C.A. § 47–2–713) that the plaintiff is entitled to should be calculated as of November 30, 1972, the last date for performance under the contracts. The defense of impossibility is unavailable to the defendant since there has been no showing that the contract was to sell a crop from specified land, and therefore no such issue was submitted to the jury. Bunge Corp. v. Miller, 381 F.Supp. 176 (W.D.Tenn. 1974); T.C.A. § 47–2–615 Comment 9 (1964); 2 Anderson, Uniform Commercial Code § 2–615:21.

■ This leaves only the defendant's assertion that damages should be measured as of November 30, 1972. Despite the receipt of monthly letters of extension, the delivery of soybeans during the extension periods, and the receipt of payment for deliveries in amounts corresponding to the contract price, defendant argues that he did not consent by his conduct to the extension of the contract period. McNabb testified that he regarded the contract as breached on the November 30, 1972 delivery date, that he regarded his later deliveries to Ralston Purina as new sales at the price posted for the day the soybeans were delivered, and that he regarded the checks from Ralston Purina at the old contract price as merely reflecting a method Ralston Purina was using to assure the payment by McNabb of any damages resulting from the November 30, 1972 breach. It should be remembered, however, that the standard for interpreting the actions of parties is the reasonable man standard. Thus "any course of performance accepted or acquiesced in without objection shall be relevant to determining the meaning of the agreement . . ." and "such course of performance shall be relevant to show a waiver or modification . . ." T.C.A. § 47–2–208(1) and

(3) (1964); *see* T.C.A. § 47–2–209 (1964). The code attempts to give effect to "all necessary and desirable modifications of sales contracts without regard to technicalities . . ." T.C.A. § 47–2–209 Comment 1 (1964). Underlying the code policy favoring preservation of contracts and the allowance of modifications is the strict requirement that all actions of parties must be in good faith, thus in order to have a valid contract modification, especially when that modification may favor a merchant, the modification must be made in demonstrable good faith. T.C.A. § 47–2–209 Comment 2 (1964).

■ In the instant case, the objective facts all point to valid extensions of the contracts. Each time Ralston Purina offered to extend the contract deadline to the end of the month, McNabb objectively indicated acceptance of the extension by delivering soybeans after the date of the offer and accepted the contract price although the market price was then higher. Thus the final date for delivery was mutually extended and, absent bad faith, damages would have to be calculated at some point after the final delivery date of February 28, 1973. Balderacchi v. Ruth, 36 Tenn.App. 421, 256 S.W.2d 390 (1952). McNabb contends, however, that Ralston Purina fails the good faith test—i. e. that Ralston Purina urged defendant to accept an extension so that, in the face of a foreseeably rising market, it could maximize damages. To prove this, defendant offered an exhibit showing the consistent rise in soybean prices from late November until the second week in March—the week in which Ralston Purina chose to cover. Furthermore, defendant offered proof that he attempted to pay damages on November 29, 1972 but his offer was rejected. The stipulated market prices show that in each successive period in which the contract was extended the price of soybeans was significantly higher than the previous month, and at no time did the price show signs of returning to its November 30th level. *See* Pre-Trial Stipulations of Facts, Exhibit 9,

Civil Action 73–391. The uncontradicted testimony of Mr. McNabb that a part of his land had been covered by 10 feet of water in November, 1972, supports the conclusion that a significant portion of the 1972 soybean crop had been destroyed by the wide-spread severe weather as per the parties' stipulation, thus rendering it unlikely that the now reduced supply would satisfy an unchanged demand.

Ralston Purina, however, insists that it sought to modify the contract in good faith. Mr. Joiner, the soybean buying manager for Ralston Purina in Memphis, testified that because of the weather 90% of its soybean contracts had not been filled by the final delivery date. The company, therefore, extended all the outstanding contracts and eventually 98% of the contracts were filled. Trial Transcript at 23. Furthermore, Mr. Joiner stated that there "is no way to know" what soybean prices are going to do, thus it was not possible for Ralston Purina to modify a contract in bad faith to maximize damages, since the price could decline and damages would thus be *minimized*. Trial Transcript at 42–43.

■ The two interrogatories answered by the jury go to the question of Ralston Purina's good faith in seeking to modify its contracts. Both answers by the jury favor the defendant McNabb. The jury determined that as early as November 30, 1972 Ralston Purina (1) had knowledge and (2) by the exercise of due diligence should have had knowledge that McNabb would not be able to complete his contract. Possessing such knowledge, Ralston Purina could not, in good faith, modify its contracts with McNabb in a way which would, in view of the past weather conditions and the trend in the market, almost inevitably result in compounding, rather than limiting, any injury to Ralston Purina. *See* J. White & R. Summers, Uniform Commercial Code (Hornbook) §§ 1–5 at pp. 39–40 (1972). This Court must be controlled by a jury's verdict where, as here, it is supported by substantial evidence. Wer-

than Bag Corp. v. Agnew, 202 F.2d 119 (6th Cir. 1953); Sitton v. Clements, 257 F.Supp. 63 (E.D.Tenn.1966).

Therefore, damages calculated as of the November 30, 1972 deadline are awarded to the plaintiff. Since McNabb failed to deliver 771.47 bushels of soybeans on contract NS–606 with a contract price of $3.33 per bushel and a market price of $3.69½ per bushel on November 30, 1972, plaintiff's damages on contract NS–606 are $281.59 ($.365 x 771.47 bushels). McNabb failed to deliver all 3,000 bushels on contract NS–609 with a contract price of $3.29 per bushel. The difference between the contract price and the market price of ($3.-69½ per bushel) on the date the buyer should have known of the breach is $.40½, thus plaintiff's damages on contract NS–609 are $1,215.00.

The Clerk will therefore enter a judgment for $1,496.59 plus interest from November 30, 1972 for the plaintiff.