[No. 3530-1.   Division One.   December 27, 1976.]

TALBOT WEGG, ET AL, *Respondents,* v. HENRY BRODERICK, INC., ET AL, *Appellants,* HERBERT J. DROKER, *Respondent.*

*Davis, Wright, Todd, Riese & Jones* and *Douglas W. Purcell,* for appellants.

*Smith, Redman & O'Hare, M. Chandler Redman, Reed, McClure, Moceri & Thonn, P.S., William R. Hickman,* and *Roy J. Moceri,* for respondents.

WILLIAMS, C.J.—Talbot and Elizabeth Wegg brought this action against Henry Broderick, Inc., Thomas J. Cain, Morio Terayama, and Herbert J. Droker to recover losses which they sustained in a real estate transaction. Trial to the court sitting without a jury resulted in judgment of $8,504.21 against Broderick and Cain and the dismissal of Terayama and Droker. Broderick and Cain appeal and the Weggs cross-appeal.

The controlling facts are not in material dispute and may be stated as follows: In the fall of 1969, the Weggs contacted Cain and Terayama, agents of the Broderick Corporation, a licensed real estate broker, for the purpose of purchasing real property for investment purposes. Within a month, the Weggs were shown an apartment house in Seattle which they decided to buy. Broderick's agents prepared an earnest money agreement which provided for a total purchase price of $240,000, payable $40,000 cash down and

the balance in monthly installments of $1,500, to be set forth on real estate contract form A-1964.

Subsequently, Droker was designated the closing agent. At the closing, all parties being present, the contract form A-1964 incorporating the terms of the earnest money agreement was presented, considered, and signed. The Weggs went into possession.

In 1971, the Boeing layoff, a rent strike, and other problems placed the apartment house venture and the Weggs' other assets in jeopardy. Up to that time, the Weggs had been under the impression that their liability under the contract was no more than the initial and installment payments, that the seller's remedy for default was forfeiture of the contract. In fact, contract form A-1964 provided that the seller had the option in event of default, of forfeiture or suit to collect delinquent payments.

The seller refused to forfeit the contract, but required performance. The Weggs and the seller subsequently negotiated a settlement and the Weggs commenced this action to recover losses claimed to have been sustained because they were not permitted by the contract to forfeit their equity in the contract, only.

The claim is based upon tort. The Weggs contend that Broderick, its agents, and Droker were negligent in not advising them that under the terms of the earnest money agreement including contract form A-1964 not attached, they could not be relieved of further obligation upon forfeiting the payments made.

As always with a claim of this type, the first question is what duty the broker and escrow agent owed the Weggs. The court found:

> Weggs had approached defendant Henry Broderick and its agents including Thomas Caine in a manner and under circumstances which put these defendants on notice that the Weggs were relying on the superior knowledge that they possessed as real estate professionals. The Weggs, while educated and intelligent people, were not specifically knowledgeable in the area of private real estate transactions or forms.

Finding of fact No. 6.

Caine inserted the reference to Real Estate Contract Form A-1964 in the earnest money agreement without consulting the Weggs as to what type of real estate contract or other form of transaction they wished and without explaining to them what their liabilities would be under Form A-1964 in event they were to default in making the agreed payments.

Finding of fact No. 7.

The real estate contract form A-1964 was not attached to the earnest money agreement prepared by Caine as agent for Broderick. The plaintiffs did not see the form of contract until it had been completed by Droker and submitted to them for signature on November 21, 1969.

Finding of fact No. 8.

The defendant Caine knew that purchasers did not have a right to elect to avoid liability under the Form A-1964 by forfeiting the down payment and installments they had made and thereafter relinquishing the real property to the purchasers. The Weggs did not know that purchasers did not have that right and in fact believed that they did have such a right of election.

Finding of fact No. 9.

The general obligation of a real estate broker toward his client has been stated generally from time to time. Our Supreme Court said in *Moon v. Phipps*, 67 Wn.2d 948, 954, 411 P.2d 157 (1966) that, "[l]oyalty is the chief virtue required of an agent." The court said in *Mersky v. Multiple Listing Bureau of Olympia, Inc.*, 73 Wn.2d 225, 229, 437 P.2d 897 (1968) that the broker must

make, in all instances, a full, fair, and timely disclosure to the principal of all facts within the knowledge or coming to the attention of the broker or his subagents which are, or may be, material in connection with the matter for which the broker is employed, and which might affect the principal's rights and interests or influence his actions.

The only witness in this case on the question of the duty of a broker to his client was an expert in real estate transaction law. This witness observed:

Q All right. Do you feel that a real estate broker has the

duty to inform or counsel his clients, prospective purchasers, as to their legal obligations under either an earnest money or real estate contract?

A I certainly do believe that a broker or salesman has a duty to counsel. I am not going to adopt necessarily your choice of words, but he certainly does have a duty, in my opinion, to counsel his customer as to the forms of security or conveyancing—let's put it that way—available to him and explain the various rights and duties which may be more or less advantageous to his customer, recognizing at the same time that the broker really wants to put a deal together and is less concerned with the form of the transaction, the structure of the transaction, than getting both parties together. I do appreciate that, but I believe to answer your question specifically, that a broker certainly does have the duty, and I might point out that the Federal Trade Commission has moved very heavily in this area in other states, and at the present time the Washington Association of—well, the Washington Board of Realtors has just drafted a brand new form of Earnest Money Agreement that incorporates the A-1964 contract; that is, it requires attachment of a copy.

Q To the Earnest Money Agreement?

A To the Earnest Money Agreement so that the parties are given a contract form they can look at.

Q If that is what is going to be used, assuming that one is used?

A Yes, right. That is being printed now, as I understand.

This witness also observed:

My experience has been that while the real estate contract is in very general use in this community and has been throughout my years of practice, that many people do not understand that the time is of the essence clause, if I may call it that—it is about paragraph 10, I believe, of the A-1964 form contract—gives the seller and not the purchaser one of two options. . . . In the event of default by the buyer, the seller has the option to sue on the intermediate defaulted installments or to forfeit, . . . He must select one or the other. Now, a lot of buyers believe, and I don't know where they get this, . . . but they believe that they are the ones who have the election, and so I, through the years of bitter

experience on this subject, have always felt that that is probably the first thing I want my purchaser to understand, is that if he is in default, he doesn't have a right to give the property back. He may be subject to a suit for specific performance on behalf of the seller, and particularly if he is a man of substantial worth, that is what you are going to find in an economy where the property may have diminished below what it was bought for.

For the purposes of this case, the foregoing, uncontradicted testimony, believed by the trial court, establishes the duty of Broderick to the Weggs. There is substantial evidence that there were no discussions at all about the rights of either party under contract form A-1964.

There is also substantial evidence, or reasonable inferences to be drawn therefrom, that the Weggs sustained damage because of their not being informed. The Weggs were of retirement age, had recently received a windfall, and as the court found, went to Broderick "for the purpose of purchasing real property which would serve as a prudent investment and as a source of retirement income." The effect of the breach of duty under these circumstances is one of fact for the trial court.

We note that the trial court entered findings that contract form A-1964 lacked clarity and that an attachment to the contract empowered the seller to appoint a receiver without notice to collect the rents in the event the purchaser "shall default in the performance of any of the terms" of the contract. The attachment supplements paragraph 10 of the contract, which provides for termination of the purchaser's rights in the event of a breach. Paragraph 11 permits suit to enforce any covenant of the contract. The two paragraphs are (exhibit 5):

(10) Time is of the essence of this contract, and it is agreed that in case the purchaser shall fail to comply with or perform any condition or agreement hereof or to make any payment required hereunder promptly at the time and in the manner herein required, the seller may elect to declare all the purchaser's rights hereunder terminated, and upon his doing so, all payments made by the purchaser hereunder and all improvements placed upon the real estate shall be forfeited to the seller as liquidated damages, and the seller shall have right to re-enter and take possession of the real estate; and no waiver by the seller of any default on the part of the purchaser shall be construed as a waiver of any subsequent default.

Service upon purchaser of all demands, notices or other papers with respect to forfeiture and termination of purchaser's rights may be made by United States Mail, postage pre-paid, return receipt requested, directed to the purchaser at his address last known to the seller.

(11) Upon seller's election to bring suit to enforce any covenant of this contract, including suit to collect any payment required hereunder, the purchaser agrees to pay a reasonable sum as attorney's fees and all costs and expenses in connection with such suit, which sums shall be included in any judgment or decree entered in such suit.

If the seller shall bring suit to procure an adjudication of the termination of the purchaser's rights hereunder, and judgment is so entered, the purchaser agrees to pay a reasonable sum as attorney's fees and all costs and expenses in connection with such suit, and also the reasonable cost of searching records to determine the condition of title at the date such suit is commenced, which sums shall be included in any judgment or decree entered in such suit.

IN WITNESS WHEREOF, the parties hereto have executed this instrument as of the date first written above,

.................................................... (SEAL)

.................................................... (SEAL)

.................................................... (SEAL)

Paragraphs 10 and 11 do refer to an election, but the remedies of the seller might be more clearly set out. As seen, an expert witness testified that many people do not understand that paragraph 10—the time is of the essence clause—gives the seller, not the purchaser, the election. The findings are adequately supported.

The Weggs' cross-appeal is insubstantial. The question of the court's being in error in assessing the damages was not raised there and cannot be considered here. As to Mr. Droker, the uncontradicted evidence is that he had a duty to obey the escrow instructions and the duty not to interfere with the transaction between the parties.

Affirmed.

CALLOW and ANDERSEN, JJ., concur.