[No. 6575–1. Division One. December 10, 1979.]

MORGAN BROS., INC., *Plaintiff*, v. HASKELL CORPOR-
ATION, INC., *Respondent*, HANSON'S, INC.,
*Appellant.*

*Roberts, Shefelman, Lawrence, Gay & Moch* and *William G. Tonkin,* for appellant.

*Asmundson, Rhea & Atwood* and *T. B. Asmundson,* for respondent.

WILLIAMS, J.—The plaintiff in this case was a general contractor on the Alyeska pipeline project in Alaska who brought this action against Haskell Corporation, Inc., for specific performance of a contract to assemble and deliver gas metering skids. Haskell answered and asserted a third–party complaint against its supplier, Hanson's, Inc., claiming damages because the skid components Hanson's had agreed to supply were defective. Trial to the court without a jury on the third–party complaint resulted in a judgment awarding Haskell damages against Hanson's, Inc. Hanson's, Inc., appeals;[1] we affirm.

The facts essential to be stated are these: In March of 1975, Haskell Corporation, Inc., successfully bid to assemble and deliver four gas metering skids to Morgan Bros., Inc., for the Alyeska oil pipeline. The skids, composed of piping, valves, and meters, also included flanges required to

---

[1]Counsel for Hanson's, Inc., on appeal is different from trial counsel.

withstand extremely low temperatures. Haskell solicited a price and delivery quote from Hanson's Pipe and Supply Company of Arizona which responded with a quotation for flanges meeting the low temperature specification. Haskell accepted the quotation and received delivery in the fall of 1975. Haskell paid Hanson's Pipe as per its invoice mailed shortly thereafter.

In May of 1976, Haskell discovered that the flanges did not meet the low temperature specification and notified Hanson's Pipe that it would be held liable for any costs incurred in repairing or replacing them. On July 2, 1976, Haskell formally revoked acceptance pursuant to RCW 62A.2–608. This litigation followed.

From May 1976 onward through the negotiations and litigation, Albert M. Goldberg, vice–president and general counsel for both Hanson's Pipe and its parent corporation, Hanson's, Inc., was the action officer. He corresponded with Haskell and others, using stationery headed "Hanson's Inc." and, occasionally, "Attorney at Law." Many of the letters referred to "this Company," "our position," and the like. Hanson's Pipe was never mentioned by name nor distinguished from Hanson's, Inc., and Haskell had no contact with anyone other than Mr. Goldberg. Haskell's summons and third–party complaint were directed to and served upon Hanson's, Inc., as third–party defendant. Specifically, the complaint was against "Hanson's Pipe and Supply Company of Arizona presently doing business as Hanson's, Inc." and asserted that Hanson's, Inc., was the successor to Hanson's Pipe. When served with process, Hanson's, Inc., appeared in the action and answered, in part, by stating that "its true name is Hanson's Pipe and Waterworks Supply Company of Arizona."

The first and most important question is whether the trial court erred in giving judgment to Haskell against Hanson's, Inc., when the quotation, acceptance, delivery, and invoicing were in the name of Hanson's Pipe. The court found:

That at all times material hereto the defendant Hanson's Inc. was an Arizona closely held corporation.

Finding of fact No. 2.

That Hanson's Pipe and Supply Co. of Arizona, a/k/a Hanson's Pipe and Waterworks Supply Co. was and is a wholly owned subsidiary of Hanson's, Inc.

Finding of fact No. 4.

That Haskell Corporation's only contact with Hanson's Pipe, a/k/a Hanson's Waterworks was the price quote of July, 1975 and the issuance of its purchase order B-5491 in August, 1975 as all subsequent contact with this supplier was by and through Hanson's, Inc. the parent company.

Finding of fact No. 28.

That Albert M. Goldberg, vice president and general counsel for Hanson's Pipe, a/k/a Hanson's Waterworks and Hanson's, Inc. personally represented the flange supplier from notice of a potential problem in May, 1976 through and including litigation.

Finding of fact No. 29.

That Goldberg corresponded with Haskell Corporation and their representatives only on Hanson's, Inc. stationery and orally and in written communication clearly indicated Hanson's, Inc. was the proper and responsible party with whom Haskell had been dealing; that such reliance was reasonable and justified by Haskell Corporation because of Goldberg's apparent as well as actual authority.

Finding of fact No. 30.

That the Arizona corporate records of Hanson's, Inc., Hanson's Pipe and Supply and Hanson's Pipe and Waterworks Co. indicate for all corporations identity of all corporate officers, members of the board of directors, street address, post office box, registered agent for service, attorney and principal shareholders so that Haskell Corporation was justified in relying on the representations of Hanson's, Inc. and its authorized representatives that it was dealing with only one corporation, Hanson's, Inc.

Finding of fact No. 31.

> That Hanson's, Inc. and its subsidiaries so commingled their property rights, interests, officers, authority both actual and apparent and indicia of oneness to Haskell that Haskell was induced to regard them as a single corporate entity.

Finding of fact No. 33.

These findings are supported by substantial evidence except that Mr. Goldberg did use "Attorney at Law" stationery on two occasions and, as previously noted, following delivery, Haskell did direct its initial complaints to Hanson's Pipe.

From the findings the court concluded:

> That this court justifiably "pierced the corporate veil" as the conduct of the parent and its subsidiary by their authorized representatives clearly indicated a functioning as one and to regard Hanson's, Inc. and Hanson's Pipe & Supply, a/k/a would aid in the avoidance of a legal obligation and duty and result in a wrong and injustice to Haskell to whom a duty was owed.

Conclusion of law No. 6.

Hanson's, Inc., argues that this conclusion does not follow from the findings of fact because it was not involved in the original sales transaction, it did not manufacture the flanges, the two businesses were conducted separately, and Haskell was not misled.

A corporation is an entity distinct from its shareholder, whether a natural or, as in this case, an artificial person, with distinct rights and liabilities. 1 W. Fletcher, *Cyclopedia of The Law of Private Corporations* § 25 (perm. ed. rev. vol. M. Wolf 1974). Only for an adequate reason will the corporate entity be disregarded and personal liability imposed directly on the corporation's stockholder and in favor of the person dealing with the corporation. The personal liability of a corporate stockholder may result when the facts illustrate an overt intent to disregard the corporate entity by using it for an improper purpose such as violating or evading a duty owed. *Culinary Workers & Bartenders Local 596, Health & Welfare Trust v. Gateway Cafe, Inc.,* 91 Wn.2d 353, 366, 588

P.2d 1334 (1979); *Harrison v. Puga,* 4 Wn. App. 52, 62–63, 480 P.2d 247, 46 A.L.R.3d 415 (1971).

The following principles upon the element of overt intent apply:

1. *(a)* If there is an overt intention to regard or disregard the corporate entity, effect will be given thereto unless so to do will violate a duty owing.

*(b)* The overt intention is that of the corporation whose entity is sought to be disregarded or of the person or persons owning its stock and sought to be visited with the consequence of regard or disregard of the corporate entity.

*(c)* The duty owing must be owing to the person seeking to invoke the doctrine, and such duty may arise from common law and equity, contract or statute.

Horowitz, *Disregarding the Entity of Private Corporations,* 15 Wash. L. Rev. 1, 11 (1940).

An overt intent to disregard the corporate entity will not be implied from the presence of common directors, shareholders, or business address alone. *J.I. Case Credit Corp. v. Stark,* 64 Wn.2d 470, 475, 392 P.2d 215 (1964). Where, however, other facts are present, such as evidence of serious confusion about the manner and capacity in which a parent and subsidiary or their respective representatives are acting, the court may be justified in disregarding the corporation. *See Associated Oil Co. v. Seiberling Rubber Co.,* 172 Wash. 204, 19 P.2d 940 (1933); *My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 233 N.E.2d 748 (1968).

In this case, it is evident, as the court found, that through the conduct of various "Hanson's" interests in Arizona, Haskell was led to believe that it was dealing with a single business enterprise. The sole correspondent, Mr. Goldberg, repeatedly referred to "this Company," "our position," "our failure," and the like. As examples, in a letter of August 2, 1976, written on Hanson's, Inc., stationery, Mr. Goldberg stated:

This Company has at all times acted expeditiously and in good faith, taking into account the problems involved.

> I believe that I have adequately outlined the position of this Company in my prior correspondence to you and in our telephone conversations. . . . In any event, notice is hereby given that this Company rejects your claim for damages in its entirety.

Exhibit 50. In a letter of September 9, 1976, again bearing the Hanson's, Inc., letterhead, Mr. Goldberg stated:

> the tendering of the credit by Hanson's Inc. to Haskell Corporation will be made by Hanson's with the purpose and intent that the issuance of that credit shall constitute full and complete compliance by Hanson's Inc. of any and all obligations on its part to Haskell Corporation with regard to the subject order.

Exhibit 61. Not once in correspondence continuing over a number of months was Hanson's Pipe mentioned by name or by implication.

> We said in *Harrison v. Puga, supra* at 63:

> when the corporate stockholder himself by his overt acts in dealing with the corporation disregards the separate entity of the corporation to the prejudice of such third person, he can scarcely complain if the court judges him by his conduct and likewise disregards the corporate entity in order to enforce the right owed to the person dealing with that corporation.

The same applies in this case.

Next, the question is whether the court properly directed the trial to proceed on the assigned trial date. In November 1977, the trial court entered an order of partial summary judgment which determined that Hanson's Pipe was liable for breach of an express warranty in a sales contract for goods. The issue of damages was reserved for trial. On February 24, 1978, an involuntary petition in bankruptcy was filed against Hanson's Pipe in an Arizona federal court. Thereafter, on March 23, 1978, Hanson's Pipe moved for a stay of proceedings because of this development. The motion was heard and granted on the 27th, the date assigned for trial. During argument on the motion, Haskell contended that even if the stay was granted, trial on the issue of damages should proceed against Hanson's, Inc., on

the theory of disregarding the corporate entity. In response, Hanson's, Inc., argued that the trial should be continued because it was no longer a party to the suit, the partial summary judgment having named Hanson's Pipe as the party liable.

Hanson's, Inc., was not dismissed from the action by the summary judgment, nor is there anything in the record to support the view that the trial court intended to drop Hanson's, Inc., as a party by ordering Hanson's Pipe liable. Hanson's, Inc., was a party to the litigation at the time of trial.

Hanson's, Inc., argues that the trial should not have commenced because disregarding the corporate entity had not been pleaded, or, at the very least, there should have been a continuance to allow it the opportunity to prepare a defense to the new theory.

CR 15(b) provides in part:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The decision to proceed with the introduction of evidence on a theory which has not been pleaded or to grant a continuance is addressed to the sound discretion of the trial court and will not be disturbed on appeal except for manifest abuse of discretion. *Quackenbush v. State,* 72 Wn.2d 670, 434 P.2d 736 (1967); *Appliance Buyers Credit Corp. v. Upton,* 65 Wn.2d 793, 800, 399 P.2d 587 (1965). The test is whether the opposing party is prepared to meet the new issue. *Bacon v. Gardner,* 38 Wn.2d 299, 305, 229 P.2d 523 (1951).

Hanson's, Inc., did not show that it was unable or unprepared to defend. The same trial counsel represented both Hanson's, Inc., and Hanson's Pipe. Both corporations were

closely held and shared common directors, officers, and principal shareholder and, as seen, acted as one enterprise. The evidence introduced by Haskell to involve Hanson's, Inc., consisted largely of official records and correspondence between it and Haskell. Much of this was also relevant to the issue of damages. The trial court did not abuse its discretion in permitting the introduction of evidence on the theory of disregarding the corporate entity, nor in denying Hanson's, Inc., a continuance.

The next question is whether the trial court erred in refusing to allow Hanson's, Inc., to amend its answer to include third–party claims against the company from whom it purchased the flanges, Midco Pipe & Tube, Inc. Hanson's, Inc., moved to amend 5 weeks before trial and the court denied the motion as untimely. Denial of leave to amend under CR 14(a) is within the discretion of the trial court. *General Elec. Co. v. Irvin,* 274 F.2d 175 (6th Cir. 1960). Hanson's, Inc., offered no reason why Midco Pipe was not brought in before. An amendment bringing in Midco would have further delayed the case which had been pending for 17 months; the trial court did not abuse its discretion in denying the motion.

The next question is whether damages for labor charges and other consequential damages were effectively excluded by a provision in the Hanson's Pipe invoice which states: "In no event will Hanson's be responsible for labor or other charges in effecting such repairs or replacement. . . . HANSON'S SHALL NOT BE LIABLE FOR CONSEQUENTIAL DAMAGES." The invoice did not accompany the flanges when delivered, but was sent some time later. Hanson's position is that this provision in the invoice modified the terms of the initial agreement. RCW 62A.2–209(1).

To be binding, a modification must meet the good faith test of RCW 62A.2–103(b). Between merchants this requires "observance of reasonable commercial standards of fair dealing in the trade." Insertion of a clause on the reverse side of an invoice materially limiting the buyer's remedies, which is received by the buyer following delivery

of the goods, does not satisfy this test. *Ralston Purina Co. v. McNabb*, 381 F. Supp. 181 (W.D. Tenn. 1974); *Ruble Forest Prods., Inc. v. Lancer Mobile Homes of Oregon, Inc.*, 269 Ore. 315, 524 P.2d 1204 (1974).

 Hanson's, Inc., next contends that even if the award was proper, the trial court erred in allowing 10 percent profit on Haskell's costs. Affirmative evidence of damages was presented through both oral testimony and a damage summary. Hanson's had an opportunity to present testimony but did not do so. Questions as to error in the assessment of damages not raised in the trial court cannot be considered on appeal. *Wegg v. Henry Broderick, Inc.*, 16 Wn. App. 589, 595, 557 P.2d 861 (1976).

 Hanson's, Inc., also contends that Haskell was improperly awarded attorney's fees for services performed at two prelitigation conferences. Although the general rule in this state is that attorney's fees are not recoverable in the absence of statutory or contract authorization, an exception exists where the natural and proximate consequence of a wrongful act by a defendant involves a plaintiff in litigation with others. *Wilber v. Western Properties*, 22 Wn. App. 458, 465–66, 589 P.2d 1273 (1979). The award of fees under this exception is not limited to expenses incurred after suit is filed. *Sigman v. Stevens–Norton, Inc.*, 70 Wn.2d 915, 923, 425 P.2d 891 (1967). At the time the conference in question occurred, Haskell was threatened with a lawsuit by Morgan Bros. Counsel attended the meetings in an attempt to verify the breach and mitigate it. The expenses were reasonably related to the threatened litigation.

Hanson's final argument is that Haskell did not properly segregate the legal fees attributable to the Haskell–Hanson's litigation from that attributable to the Haskell–Morgan litigation. This was not addressed to the trial court and will not be considered on appeal. *Wegg v. Henry Broderick, Inc., supra*.

The judgment is affirmed.

ANDERSEN and RINGOLD, JJ., concur.

RINGOLD, J. (concurring)—I concur, and add emphasis to one aspect of this case. As my brother Judge Williams demonstrates there is substantial evidence to support the findings. Though many opinions mistake and misapply *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959), the precise holding is to the point here:

> The findings are amply sustained by the proofs. If we were of the opinion that the trial court should have resolved the factual dispute the other way, the constitution does not authorize this court to substitute its findings for that of the trial court.

The appellate role in the judicial process was recently restated:

> Our function begins and ends with ascertaining whether the challenged finding of fact, as entered by the trial court, is supported by substantial evidence and, if so, whether the findings as a whole sustain the challenged conclusions of law.

*In re Kier*, 21 Wn. App. 836, 840, 587 P.2d 592 (1978).