IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JOEL KELLY, individually and by and
through JACQUELINE KELLY, JAKE
KELLY, JESSICA KELLY and JOSHUA
KELLY, for themselves and as the children
of Joel Kelly,

    Respondent,

    v.

COUNTY OF SNOHOMISH, by and
through NORTH SOUND REGIONAL
SUPPORT NETWORK d/b/a NORTH
SOUND MENTAL HEALTH
ADMINISTRATION, a Washington
municipal corporation and regional support
network,

    Appellant,

    and

PROVIDENCE HEALTH & SERVICES-
WASHINGTON, d/b/a PROVIDENCE
REGIONAL MEDICAL CENTER
EVERETT,

    Defendant.

No. 76797-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 22, 2019

HAZELRIGG-HERNANDEZ, J. —We will not substitute our judgment for that of a properly instructed jury. Neither will we require a court to reconsider its denial of a request to amend pleadings when its decision was based on the unnecessary delay of the party seeking amendment. Snohomish County asks us to reconsider

jury determinations of facts, and to remand to amend its pleadings. We decline to do so, and affirm the verdict of the jury and the judgment of the trial court.

FACTS

Joel Kelly suffered a serious brain injury after falling from a ladder. After Kelly was treated at a critical care unit, he was transferred to an inpatient rehabilitation unit at Providence Medical Center. Kelly did not have the decision making capacity to decide to leave Providence. His ex-wife had his power of attorney for medical decisions and could have chosen to take him out of the rehabilitation unit. He was an elopement/wander risk. Within his first hour of arrival on the rehabilitation unit, Kelly was assigned a one-on-one sitter to help keep him safe and redirect him. He required the one-on-one sitter throughout his entire stay. Kelly perseverated on leaving throughout his stay.

On Thursday, November 28, 2013, Kelly's family visited him at the rehabilitation unit. After Kelly's family left, he became more agitated and wanted to leave. Kelly continued to be confused, agitated, and disoriented. Providence placed him in soft, two-point restraints, connecting his wrists to the bed. The subsequent events were contested at the trial court.

That evening, Walter Garre, a dispatch line volunteer with Volunteers of America, received a call regarding Kelly. Garre's notes from the call indicated that Kelly was acutely psychologically distressed, uncontrollable, uncooperative, was unable to make safe decisions, exhibited poor judgment, had no safety awareness, and was not oriented to his surroundings. His notes also indicated Kelly was medically cleared for discharge. Garre had no independent recollection of the call,

2

but he testified he would have read everything in the note to the County Designated Mental Health Professional (DMHP), Andrea Waldschmidt. He also testified that he would have included that Kelly was physically aggressive with staff in his notes if that information was communicated to him.

Linda Albizu, the nurse caring for Kelly that day, testified that she told DMHP Waldschmidt that Mr. Kelly wanted to leave but was unable to make safe decisions for himself. She told Waldschmidt she wanted to have Kelly evaluated in the interest of his safety. She recalled telling Waldschmidt that Kelly believed he was in Mexico, but could not recall if she told her Kelly was combative.

Dr. Steven Lee, the on-call physician working at the time, testified that he spoke with Waldschmidt regarding Kelly, and wanted her to evaluate Kelly to take him out of the rehabilitation unit and to a safer place. He testified that Waldschmidt told him she could not evaluate Kelly because his behaviors and confusion were due to traumatic brain injury, not a psychiatric issue. Lee testified that Kelly's medical treatment was not a barrier to transferring him to another facility. Lee was not at the hospital that night.

Charge Nurse Megan Stefanich oversaw patient care on Kelly's rehabilitation unit. She testified she called either an intake person or DMHP. She testified the person she spoke with asked about Kelly's behaviors, confusion, diagnosis, and general questions about the situation. She explained Kelly's mood, temper, and actions, including shoving staff, being verbally abusive, kicking, and hitting. She was told the DMHP was not coming out for an evaluation because Kelly was an in-patient at the hospital.

3

Waldschmidt recalled speaking with Garre, Albizu, and Lee. She did not recall speaking with Stefanich, but her phone records indicated there were phone calls she did not remember. Waldschmidt testified that no one told her Kelly was combative. She testified that Lee did not want Kelly forced from the medical facility, was still providing medical treatment to Kelly, and was not interested in psychiatric treatment. She testified that Lee was unaware that a patient could not be forced to undergo medical treatment during an Involuntary Treatment Act[1] (ITA) detention.

Waldschmidt testified that the purpose of ITA detention was to force psychiatric treatment. She testified that she determined not to evaluate Kelly because he was not medically cleared for discharge. She suggested Lee contact the hospital's legal department to keep Kelly at the hospital for medical reasons. Waldshmidt was unaware that Lee was not at the hospital. She was unaware that Kelly was in restraints at the time of the call. Waldshmidt testified that if she was informed that Kelly was in restraints or acting combative toward the staff, she would have documented that information in her notes. She believed Kelly was not gravely disabled because the hospital was providing for his care.

Kelly returned to baseline the next morning. His doctor did not expect to have any further issues with him. His doctor did not think it was necessary to call mental health crisis services. Kelly attempted to elope in the early afternoon of the next day, but was redirected to his room and medicated. Kelly stayed in his room for approximately half an hour. Kelly then exited the facility. Providence staff

---

[1] Chapter 71.05 RCW

4

attempted to redirect Kelly, but refused to restrain him. Providence's security staff, Carl Swope, testified that he would have forcefully restrained Kelly if Kelly was held by an ITA detention. After Kelly eloped, he fell down an unfinished staircase at a construction site. As a result of the fall, Kelly suffered grave injuries.

Kelly and his family filed the present action against Snohomish County in King County Superior Court. Snohomish pleaded an affirmative defense against Providence. Kelly reluctantly amended his complaint to include Providence. Kelly settled with Providence before trial.

At trial, Kelly's expert, Dave Stewart, testified that Waldschmidt should have done more investigation. He also believed Kelly was gravely disabled at the time of the call and that his brain injury was a mental disorder that would support an ITA detention. He opined that if Waldschmidt had exercised reasonable standards for a DMHP, Kelly would not have injured himself.

The jury awarded Kelly 10.8 million dollars in damages and found Providence 60 percent at fault and Snohomish 40 percent at fault.

DISCUSSION

After a trial on the merits, with a properly instructed jury, Snohomish County asks this court to review the trial court's denial of its motions for summary judgment, motions for judgment as a matter of law, and motion for a new trial. Denial of a motion for summary judgment is generally not an appealable order. DGHI, Enters. v. Pac. Cities, Inc., 137 Wn.2d 933, 949, 977 P.2d 1231 (1999), (citing Sea-Pac Co., Inc. v. United Food and Commercial Workers Local Union 44, 103 Wn.2d 800, 801-02, 699 P.2d 217 (1985)).

While Washington courts occasionally permit discretionary review from an order of summary judgment under RAP 2.3(b)(1), the purpose of that review is to correct "an obvious error which would render further proceedings useless" RAP 2.3(b)(1). We are not aware of a Washington court that has reviewed denial of summary judgment after a trial on the merits, and Snohomish does not call such a case to our attention. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Washington courts also consider orders denying summary judgment to be interlocutory in nature and permit the issues raised in the motion to be reviewed after trial in an appeal from final judgment. DGHI, Enters., 137 Wn.2d at 949, (citing Rodin v. O'Beirn, 3 Wn. App. 327, 332, 474 P.2d 903, review denied, 78 Wn.2d 996 (1970)). We therefore decline to consider Snohomish's motions for summary judgment, and instead review their post-trial motion for judgment as a matter of law and motion for a new trial.

"Courts are appropriately hesitant to take cases away from juries." H.B.H. v. State, 192 Wn.2d 154, 162, 429 P.3d 484 (2018). Judgment as a matter of law should only be granted when "after viewing the evidence in the light most favorable to the nonmoving party, there is no substantial evidence or reasonable inferences therefrom to support a verdict for the nonmoving party." Id. at 162, (citing Goodman v. Goodman, 128 Wn.2d 366, 371, 907 P.2d 290 (1995)). "We review judgments as a matter of law de novo." Paetsch v. Spokane Dermatology Clinic, P.S., 182

Wn.2d 842, 848, 384 P.3d 389 (2015), (citing Faust v. Albertson, 167 Wn.2d 531, 539 n.2, 222 P.3d 1208 (2009)).

I.    Gross Negligence

Snohomish argues that it was not grossly negligent as a matter of law. We disagree. Harper v. State, recently decided by the Supreme Court, clarifies the standard for proving gross negligence. 192 Wn.2d 328, P.3d at 1071 (2018).

There is no dispute that liability in this case is governed by the ITA, and that Snohomish can only be held liable if it was grossly negligent. RCW 71.05.120(1). To prove gross negligence, a plaintiff must show the defendant "'substantially' breached its duty by failing to act with even slight care." Harper, 192 Wn.2d at 341, (quoting Nist v. Tudor, 67 Wn.2d 322, 331, 407 P.2d 798 (1965) (emphasis omitted)).

Courts "may determine [breach of duty] as a matter of law 'if reasonable minds could not differ.'" Id. To analyze a claim of gross negligence on a motion for summary judgment, the court should specifically identify the action "the plaintiff claims that the defendant should have taken but did not, allegedly causing the plaintiff's injury." Id. at 343  The court then determines "whether the plaintiff presented substantial evidence that the defendant failed to exercise slight care under the circumstances presented, considering both the relevant failure and, if applicable, any relevant actions that the defendant did take." Id., (citing Nist, 67 Wn.2d at 332).  If the evidence shows the defendant may have failed to exercise slight care in the specific area relevant to the case, judgment as a matter of law

should not be granted even if a defendant exercised great care in other respects. Id. at 344.

In Harper, the Supreme Court considered the actions that the defendant, Department of Corrections (DOC), performed to prevent the supervised offender from contacting the protected party against the further investigative actions the plaintiff alleged the DOC should have performed. Id. at 348-49. The Court found that reasonable minds could not differ about the fact that DOC exercised slight care. Id. at 340.[2]

This case comes to us in a very different posture from Harper. Harper was decided on summary judgment. Id. at 331. This case went before a jury that was properly instructed on gross negligence and returned a verdict for the plaintiffs. In Harper, the facts regarding what DOC knew and did were mostly undisputed. Instead, the parties argued about what DOC should have known and should have done. Here, there was significant dispute about what Waldschmidt actually did and what she actually knew. Conflicting evidence supported Kelly's version of events, and even if reasonable minds could come to a different conclusion, the jury was entitled to resolve those conflicts in Kelly's favor.

We agree with the trial court that whether or not Kelly has proved gross negligence is a close question. The closeness of that question makes it an

---

[2] In Nist the Court considered a very narrow set of actions by the defendant; evaluating the defendant's conduct regarding an oncoming truck and ignoring the defendant's care in regard to following cars. 67 Wn.2d at 331. Harper does not contradict that approach. In Nist, the breached duty was to yield to oncoming traffic. Id. (Defendant driver slowing her car, using her turn signal, and waiting "had reference to following cars and little or no relationship to the hazards generated by the approaching truck, for the truck had right of way, and the duty to yield rested upon the [defendant's] car before making its left turn.").

appropriate question for the trier of fact. The properly instructed jury considered the disputed facts and standard of care, and returned a verdict for the plaintiff. Substantial evidence supports that verdict, and we will not disturb it. We affirm the judgment of the trial court.

II.    Proximate Cause

Proximate cause consists of two elements: cause in fact and legal causation. Hartley v. State, 103 Wn.2d 768, 777, 698 P.2d 77 (1985), (citing Harbeson v. Parke-Davis, Inc., 98 Wn.2d 460, 475, 656 P.2d 483 (1983)). "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." Hartley, 103 Wn.2d at 778, (citing King v. City of Seattle, 84 Wn.2d 239, 249, 525 P.2d 228 (1974)). Legal causation rests on policy considerations regarding how far the consequences of action or inaction should extend. Hartley, 103 Wn.2d at 779. We find that both elements of proximate cause support the jury verdict.

A.    Cause in Fact

Cause in fact is normally a question for the jury. N.L. v. Bethel School District, 186 Wn.2d 422, 437, 378 P.3d 162 (2016), (citing Hartley, 103 Wn.2d at 778). But "[c]ause in fact does not exist if the connection between an act and the later injury is indirect and speculative." Estate of Bordon ex rel. Anderson v. State, Dept. of Corrections, 122 Wn. App. 227, 240, 95 P.3d 764 (2004), (citing Walters v. Hampton, 14 Wn. App. 548, 555, 543 P.2d 648 (1975)).

Snohomish argues that the jury can only find cause in fact in this case through speculation. The evidence of cause in fact here is not as speculative as

the evidence in the cases Snohomish relies on to support its argument. cf. Bordon, 122 Wn. App. at 240 (Finding plaintiff provided no evidence that offender supervised by DOC would have remained in jail if not for DOC's negligence.); Hungerford v. State Dept. of Corrections, 135 Wn. App. 240, 253, 139 P.3d 1131 (2006) (same); Smith v. Washington State Dept. of Corrections, 189 Wn. App. 839, 359 P.3d 867 (2015) (same).

Here, viewing the facts in the light most favorable to the plaintiff, Kelly met the criteria for an ITA detention. If an ITA detention had been ordered Kelly would have at least been certified for detention at Providence.

The strongest argument in favor of Kelly is that security guard Swope testified that he would have restrained Kelly if Kelly had been the subject of ITA detention. The only counterargument is that under Providence's elopement policy, he should have restrained Kelly regardless. A scenario where Swope forcefully stopped Kelly from leaving the building because Kelly was held by an ITA detention is not so speculative to prevent this case from being decided by a jury. Viewing the evidence in the light most favorable to Kelly, we find that cause in fact was an appropriate question for the jury and affirm their verdict.

B.    Legal Causation

Legal cause "involves a determination of whether liability should attach as a matter of law." State v. Bauer, 180 Wn.2d 929, 936, 329 P.3d 67 (2014), (citing Hartley, 103 Wn.2d at 779). That determination requires "'mixed considerations of logic, common sense, justice, policy, and precedent.'" Hartley, 103 Wn.2d at 779, (quoting King, 84 Wn.22d at 250). Legal cause focuses on "whether . . . the

connection between the ultimate result and the tortfeasor's act is too remote or attenuated to impose liability." Dewar v. Smith, 185 Wn. App. 544, 563, 342 P.3d 328 (2015), (citing Michaels v. CH2M Hill, Inc., 171 Wn.2d 587, 609-10, 257 P.3d 532 (2011)). "Legal cause is a question . . . for the court to decide." Minahan v. Western Washington Fair Ass'n, 117 Wn. App. 881, 888, 73 P.3d 1019 (2003), (citing Kim v. Budget Rent A Car Sys., Inc., 143 Wn.2d 190, 204, 15 P.3d 1283 (2001)).

The clearest test of legal causation is foreseeability: whether the result of the action or inaction is within the general field of danger covered by the duty imposed on the defendant. Rikstad v. Holmberg, 76 Wn.2d 265, 269, 456 P.2d 355 (1969). A patient injuring themselves or others after a DMHP fails to initiate an ITA detention is exactly the type of harm the detention is intended to prevent. Kelly's injury is not too remote or attenuated from Snohomish's failure for the court to impose liability. We find legal causation satisfied under the foreseeability analysis.

III.    Construction Entities

Snohomish argues that the trial court denied its motion to amend its answer as a sanction for late disclosure, and asks this court to reverse because the trial court failed to conduct a Burnet test on the record and failed to consider whether lesser sanctions would have sufficed. Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). Kelly argues that the court instead denied Snohomish's motion to amend its answer on CR 12(i) grounds. Reviewing courts can affirm the judgment of the trial court on any basis found in the record. Backlund v. Univ. of Wash., 137 Wn.2d 651, 669-70, 975 P.2d 950 (1999), (citing LaMon v.

Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027, cert. denied, 493 U.S. 814 (1989). CR 12(i) is a clearer fit with the substance of Snohomish's request. Snohomish not only sought to present additional evidence, it asked to apportion fault to a party not named in its pleadings, requiring an amendment to those pleadings. Analysis under CR 12(i) also appears more consistent with the court's oral ruling.[3]

Under CR 8(c), parties must plead affirmative defenses or risk waiving them. Beaupre v. Pierce County, 161 Wn.2d 568, 575, 166 P.3d 712 (2007), (citing Farmers Ins. Co. of Wash. v. Miller, 87 Wn.2d 70, 76, 549 P.2d 9 (1976)). Affirmative defenses are deemed to be waived if not pleaded, asserted with a motion under CR 12(b), or tried by consent of the parties. The decision to grant or deny leave to amend pleadings is within the discretion of the trial court. Cambridge Townhomes, LLC v. Pacific Star Roofing, Inc., 166 Wn.2d 475, 483, 209 P.3d 863 (2009), (citing Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). Appellate courts affirm the trial court's ruling unless it is manifestly unreasonable, or was exercised on untenable grounds or for untenable reasons. Id. at 483.

Leave to amend pleadings "shall be freely given when justice so requires." CR 15(a). Undue delay is not normally enough to deny an amendment to the pleadings without prejudice to the opposing party. Caruso v. Local Union No. 690 of Intern. Broth. Of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., 100 Wn.2d 343, 349, 670 P.2d 240 (1983) (citing Appliance Buyers Credit Corp. v. Upton, 65 Wn.2d 793, 800, 399 P.2d 587 (1965)). However, where leave to add

---

[3]The trial court talks about Burnet and strikes Snohomish's expert witness, and then goes on to state "I am absolutely not allowing an empty chair allocation to the construction company under CR 12(i)"

additional parties has been sought, "inexcusable neglect alone is a sufficient ground for denying the motion." Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 174, 744 P.2d 1032 (1987) (citing North St. Ass'n v. City of Olympia, 96 Wn.2d 359, 368, 635 P.2d 721 (1981)). If the parties to be added were apparent or discoverable upon reasonable investigation, the failure to name them is inexcusable. Id. at 174.

Here, the decision to deny Snohomish's motion to amend its pleadings fell within the trial court's broad discretion. Snohomish failed to name the construction entities in its initial answer. Snohomish did not seek to attribute fault to the construction entities until almost a year after it filed its answer, only three weeks before the then scheduled trial date. The trial court specifically found that Snohomish's failure to name the construction entities in its answer was inexcusable. The facts regarding the construction entities were present at the beginning of the case and were available to Snohomish. Rejecting the amendment on the basis of Snohomish's undue delay was an appropriate exercise of the court's discretion.

While Snohomish argues that the court should have reconsidered its ruling after the prejudice to Kelly abated, the court's ruling was based on Snohomish's inexcusable delay to name the construction entities in its answer. Between the initial motion to amend its pleadings and the motion for reconsideration, nothing had changed regarding the delay, and the court was not required to find prejudice to support its ruling. We affirm.

IV.    Misconduct

This court reviews a trial court's order granting or denying a new trial for abuse of discretion when it is not based on an error of law. Teter v. Deck, 174 Wn.2d 207, 222, 274 P.3d 336 (2012), (citing Detrick v. Garretson Packing Co., 73 Wn.2d 804, 812, 440 P.2d 834 (1968)). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Id. at 222, (citing In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 362 (1997)). A court's decision is manifestly unreasonable if it is outside the range of acceptable choices; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. Littlefield, 133 Wn.2d at 47.

A trial court may grant a new trial where misconduct of the prevailing party materially affects the substantial rights of the losing party. Teter, 174 Wn.2d at 222. (citing Alum. Co. of Am. V. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 539, 998 P.2d 856 (2000)). A court properly grants a new trial where "(1) the conduct complained of is misconduct, (2) the misconduct is prejudicial, (3) the moving party objected to the misconduct at trial, and (4) the misconduct was not cured by the court's instructions." Id.

Snohomish alleges that Kelly's counsel violated motions in limine by expressing opinions suggesting that Providence was not at fault and attempting to elicit testimony that Waldschmidt didn't want to leave her home. Additionally, Snohomish alleges that Kelly's counsel did not have a good-faith basis to ask

Waldschmidt whether she had read a newspaper article regarding Kelly's fall before submitting her notes regarding the call. Here, the trial court found misconduct by Kelly's counsel, but even assuming it found prejudice, and Snohomish objected to the misconduct at trial, the trial court's oral findings make it clear that the court found the prejudice was cured by the jury instructions. While reasonable minds could differ as to the trial court's conclusion, nothing in the record indicates that the court's decision was outside the range of acceptable choices, based on unsupported facts, or a misapplication of the facts to the rule. We affirm the trial court's order to deny a new trial.

WE CONCUR: