**FILED**
**DECEMBER 8, 2020**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DAVID L. SNYDER and MARY B. SNYDER, husband and wife,, | ) ) ) | No. 37317-7-III |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| LANCE CAMPBELL and BRIDGET CAMPBELL, husband and wife, | ) ) ) ) | |
| Appellants. | ) | |

FEARING, J. — Landowners Lance and Bridget Campbell appeal the trial court's

grant of summary judgment to their southerly neighbors David and Mary Snyder in a

quiet title action. The Campbells claim title to the disputed territory by way of adverse

possession. We affirm the grant of summary judgment in favor of the Snyders and an

award of reasonable attorney fees and costs in favor of the Snyders.

FACTS

The parties dispute ownership of a strip of land along the boundary between their

respective Spokane residential lots. Plaintiffs David and Mary Snyder own 5017 North

Altamont Street, the residence property adjacent to the south of the Campbell Property.

Defendants Lance and Bridget Campbell own the property located at 5021 North

Altamont Street. David Snyder's parents purchased the Snyder Property in 1945, and

David inherited the home from his mother's estate in 1991. David and Mary Snyder have

lived at 5017 North Altamont Street since 1996. The Campbells moved to 5021 North

Altamont Street in February 2015. Since the trial court granted David and Mary Snyder

summary judgment, we gather facts from summary judgment affidavits.

The Campbell and Snyder residences sit within Spokane's Hillyard neighborhood,

platted and developed around 1910. The two homes lie in close proximity. The south

side of the Campbell house and the abode's eave encroach onto the northern section of

the Snyder property. This awkward and compact situation between adjoining houses

repeats on plots along Altamont Street.

The Snyder family, including David Snyder's parents, had always granted

permission to the residents of 5021 North Altamont Street to enter the Snyder land in

order to access the south side of the Campbell home. Despite the encroachment and

permitted use by the neighbors, David and Mary Snyder and their predecessors in interest

continuously treated the property immediately south of the Campbell house, to the extent

the property falls within their legal description, as their own. The Snyders watered and

mowed the lawn and planted bushes, flowers, and shrubs in this area. The Snyders also

used this north portion of their yard for entertaining, gardening, and playing with grandchildren and pets.

In 1997, eighteen years before Lance and Bridget Campbell purchased their property, David and Mary Snyder constructed a chain link fence enclosure in their backyard to contain their dog and grandchildren. The Snyders did not erect the fence on the boundary line between the two lots due to a fragile plant lying on the line. The Snyders placed the fence one and a half to two feet south of the boundary. The chain link fence, together with a separate wooden fence, hog wire, and a garage, created an enclosed backyard. A 1.5-2 by 135 foot strip remained between the fence and the boundary line with the 5021 North Altamont Street lot.

Sherry Schmidt owned 5021 North Altamont Street between 1995 and 2006. The Snyders informed Schmidt that they did not place the chain link fence on the boundary line and that they did not intend for the fence to become the boundary line between the lots. The Snyders continued to use and maintain the strip of property between the fence and the boundary line. Until the autumn of 2014, Mary Snyder monthly cut, with a weed whacker, the strip of lawn north of the fence.

Sherry Schmidt sold 5021 North Altamont Street to Wade McClure, and McClure resided at the residence from March 29, 2006 to December 17, 2014. McClure understood that the Snyders' fence enclosure did not represent a delineation of the

property line between the Campbell property and the Snyder property. McClure knew that David and Mary Snyder installed the fence completely on their land to contain their grandchildren and dog. Federal National Mortgage Association foreclosed on 5021 North Altamont in December 2014.

Lance and Bridget Campbell purchased 5021 North Altamont from Federal National Mortgage Association in February 2015 and moved to the lot then. David Snyder then informed Lance Campbell that the chain link fence did not lie on the property line nor mark the boundary line between 5017 and 5021 North Altamont Street. According to David Snyder, Campbell acknowledged the same.

According to Bridget Campbell, when they purchased their residence, they concluded that the disputed area north of the fence belonged to their lot. The disputed strip then contained a row of juniper bushes, two to six feet high, which extended from the east end of the chain link fence toward the front of the Campbell house. The row of bushes sat two to three feet from the south side of the Campbell house. Grass grew on the south side of the bushes, but, between the bushes and the Campbell house, only dirt and weeds adorned the landscape.

Beginning in February 2015, Lance and Bridget Campbell accumulated chattels, including wood, tires, and vehicles in their back yard. The Campbells' possessions spilled over onto the Snyders' property and up against the chain link fence. In the

4

summer of 2015, David and Mary Snyder removed the present fence and installed a new chain link fences closer to the true boundary line. In the front yard, the fence ran east to west, parallel to the boundary line, but two inches south of the line. In the backyard, the fence also ran east to west, parallel to the boundary line, eight to twelve inches south of the boundary line. The Snyders did not build the fence on the boundary line due to the wood, tires, and other personal property in the Campbells' backyard that rested over the boundary line.

In July 2015, Lance and Bridget Campbell installed a plywood structure to cover a window on the south side of their home. The structure extended beyond the boundary line with the Snyders' property. David and Mary Snyder requested that the Campbells remove the plywood structure to eliminate the encroachment. The Campbells refused.

Because of the dispute over the boundary line, David and Mary Snyder commissioned Rudy Kitzan to survey their property and the north boundary line with 5021 North Altamont. The survey, performed on July 8, 2015, depicted the southern portion of the Campbells' home and eave as encroaching onto the Snyders' lot. The survey confirmed the Snyders' understanding of the location of the boundary line.

David and Mary Snyder hired attorney Tricia Usab to attempt to negotiate a compromise with Lance and Bridget Campbell. Usab and the Campbells' attorney, Joe Carrol, engaged in extensive pre-litigation negotiations, during which Usab proposed

several, non-exclusive easements that would allow the Campbells to access the south side of their house and run water and sewer lines across the Snyder lot. The Snyders also offered to purchase the Campbell Property. The Campbells rejected the proposals and instead demanded to receive an exclusive, two-foot wide easement running the length of the Campbell house together with other maintenance and water and sewer easements. The Snyders rejected the counteroffer.

Lance and Bridget Campbell contend that, in October 2016, they accepted a proposal by David and Mary Snyder to refrain from maintaining flower beds or gardens under the eaves of the Campbells' house and from spraying water on the side of the house. The Campbells claim that the Snyders breached the agreement. Tricia Usab avers that she lacks any record of such an offer to compromise, let alone the consummation of an agreement.

PROCEDURE

In November 2018, David and Mary Snyder filed suit to quiet title to their property and eject Lance and Bridget Campbell from their land. Lance and Bridget Campbell counterclaimed for quiet title and ejectment based on adverse possession and a mutually recognized boundary line.

In a summary judgment motion, David and Mary Snyder requested that the trial court enter judgment in their favor on their quiet title and ejectment claims and dismiss

the Campbells' counterclaims.  In support of the motion, the Snyders filed declarations

by David Snyder, Wade McClure, and the surveyor, Rudy Kitzan.  Kitzan's declaration

attested to the accuracy of his survey and described the location on a map of the boundary

between the Snyder property and the Campbell property.  Kitzan attached a copy of his

survey to the declaration.  Lance and Bridget Campbell only filed a declaration of Bridget

Campbell in opposition to the motion.

The trial court granted David and Mary Snyder's summary judgment motion.  At

the conclusion of oral argument in support of and in opposition to the motion, the trial

court also ruled to grant reasonable attorney fees and costs to the Snyders.  The court

commented:

> There's a discussion here about negotiations that were entered into
> to try and resolve this matter before it came to this.  The Court can consider
> these negotiations as either good faith or bad faith of the parties in trying to
> resolve this matter or warranting attorney fees.  The statute allows, that
> being RCW 7.28.083, the prevailing party an award of attorney fees.
> Here, it is clear where the boundary line is located, as shown in the
> survey, and the claim by the Campbells for adverse possession is incredibly
> weak given that they didn't possess the property for ten years and had no
> evidence to show that Mr. McClure ever adversely possessed it.  The Court
> finds it is equitable to enter an award of attorney fees in favor of the
> Snyders.

Report of Proceedings (RP) (Sept. 20, 2019) at 5.

After the summary judgment hearing, David and Mary Snyder filed a motion for

an award of reasonable attorney fees and costs in the sum of $38,238.38.  They sought

recovery for the sum under RCW 7.28.083(3), a statute that allows the trial court to grant the prevailing party reasonable attorney fees and costs in an adverse possession suit. The Snyders' counsel filed a detailed accounting for the fees and costs sought. Counsel averred, in a declaration, that the sum sought was necessary to advance the Snyders' legal interests and the amount was reasonable. Counsel added that his hourly rate was reasonable based on his experience and other attorney rates in the locale.

Lance and Bridget Campbell objected to entry of a judgment for reasonable attorney fees and costs on two grounds. First, David and Mary Snyder filed their request prematurely because the trial court had yet to resolve all pending claims between the parties. Second, some of the requested fees and costs concerned work performed before the Snyders' counsel filed suit. The Campbells did not object to the reasonableness of the fees sought by the Snyders' counsel. The Campbells did not argue that any award would not be equitable and just.

The trial court awarded David and Mary Snyder costs of $416.88 and reasonable attorney fees of $36,278.50, for a total judgment of $36,695.38. The trial court denied the Snyders recovery for the sum of $1,543.00, the cost of Rudy Kitzan's survey.

The court ruled at the end of the hearing on fees and costs:

> The prevailing party was the plaintiffs [David and Mary Snyder], and by statute, the Court may award attorney fees and costs. That's not required like it is in [RCW] 49.48 [the wage statute]. I believe in that statute [the wage statute] it's mandatory. But in both statutes it discusses

8

an action. In the wage claim statute it states "in any action in which a person is successful in recovering wages." That's probably the case because if you were able to settle a wage dispute in advance of litigation, there isn't any statutory authority for attorney fees. Perhaps that holds true in an adverse possession claim where if there is some type of settlement before litigation, there's no provision for attorney fees because, again, that statute discusses an action.

Here there's a claim for all attorney fees dating back to 2016, before this action was filed. The first question is whether or not the plaintiff is entitled to an award of attorney fees and, if so, how much. That's based upon the reasonableness of the fees as well as the hourly rate of the attorneys, and then the Court may adjust that either upward or downward.

Here, there is statutory authority for an award of attorney fees. This is an action in which the plaintiffs prevailed on the issue of adverse possession and the Court, in its discretion, may award both fees and costs. The fees have to be reasonable and, overall, equitable and just.

In reviewing all these documents, I don't know that it's disputed that the time spent post-filing was reasonable. I didn't hear anything about that time being unreasonable, just the time prior to filing. Also, I don't recall seeing anything about the attorneys' rates being unreasonable. . . .

. . . .

As far as the attorney fees are concerned, the statute provides the prevailing party is entitled to attorney fees. Had this matter settled in 2018, there wouldn't have been an award of any attorney fees because there wouldn't be an action to award those fees. I understand that between 2016 and 2018 the intent was to try and reach some type of settlement. I recall reading documents discussing the type of settlement, which never happened.

My concern is if the Court were not to award pre-filing attorney fees, what I'd really be indicating is if there is a property dispute, the best thing to do is file a lawsuit and put it before the court, that way you can recover the entirety of the attorney fees. If you try and settle things on your own, then you could be out, potentially, tens of thousands of dollars because you don't have the benefit to this statute.

But here, it appears that there was a good faith attempt to settle before coming to court. That didn't occur. It was filed and the plaintiffs were the prevailing party. It is just and equitable for them to receive the entirety of that time for the simple reason that they did prevail on this issue.

9

> They've attempted to assert their lawful right to that property since the very beginning and it escalated to this point to find that they were legally entitled to that property, and then make them pay pretty much half their attorney fees to have that right affirmed wouldn't be just. The Court will award attorney fees in the amount of $36,278.50, meaning the total judgment will be $36,695.38.

RP (Oct. 25, 2019) at 2-5. The trial court entered no written findings of fact or conclusions of law in support of the grant of reasonable attorney fees and costs other than two findings embedded in the judgment. Those two findings read:

> 2. Costs in this matter are owed to the Snyders in the amount of $1,959.88.
> 3. Reasonable attorneys' fees total $36,278.50.

Clerk's Papers at 266.

## LAW AND ANALYSIS

On appeal, Lance and Bridget Campbell assign error to the award of summary judgment to David and Mary Snyder and to the award of reasonable attorney fees and costs to the Snyders. We address these assignments in such order.

### Adverse Possession

Lance and Bridget Campbell assert that a genuine issue of material fact exists as to whether they acquired title to the disputed strip of land north of the Snyders' chain link fence via adverse possession and/or mutual recognition and acquiescence. David and Mary Snyder respond that the Campbells lack any evidence that they and their

10

predecessors held continuous possession of the disputed land for ten years, an essential element of adverse possession and mutual recognition claims.

We review summary judgment orders de novo. *State ex rel. Banks v. Drummond*, 187 Wn.2d 157, 167, 385 P.3d 769 (2016). Summary judgment is proper when "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." CR 56(c); *State ex rel. Banks v. Drummond*, 187 Wn.2d at 167. We construe evidence and inferences from the evidence in favor of the nonmoving party. *State ex rel. Banks v. Drummond*, 187 Wn.2d at 167.

One may acquire legal title to another individual's land through adverse possession by possessing the property for a period of at least ten years in a manner that is (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984). Possession of property is determined by the nature, character, and locality of the property. *Lingvall v. Bartmess*, 97 Wn. App. 245, 255, 982 P.2d 690 (1999). Actual possession is uninterrupted so long as there is no cessation of possession. *Lingvall v. Bartmess*, 97 Wn. App. at 256. For purposes of adverse possession, hostility does not refer to enmity or ill-will, but rather to the use of the property as its true owner. *Chaplin v. Sanders*, 100 Wn.2d at 857-58. When there is privity between successive occupants holding continuously and adversely

to the true owner, the successive periods of occupation may be aggregated to establish the ten-year period. *Roy v. Cunningham*, 46 Wn. App. 409, 413, 731 P.2d 526 (1986).

To establish a boundary line by mutual recognition and acquiescence, the claiming party must show that (1) a boundary line was certain, well-defined, and physically designated on the ground, (2) the adjoining landowners or their predecessors in interest manifested a mutual recognition of the designated boundary line as the true line, in good faith, and (3) mutual recognition of the boundary line continued for the period of time necessary to establish adverse possession. *Lamm v. McTighe*, 72 Wn.2d 587, 593, 434 P.2d 565 (1967). A boundary line may be designated by monuments, roadways, or fences, among other markers. *Lamm v. McTighe*, 72 Wn.2d at 593.

David and Mary Snyder presented undisputed evidence that they continued to use the disputed territory north of the chain link fence at least through the ownership of the northerly lot by Lance and Bridget Campbell beginning in 2015. Mary Snyder maintained the area. Any use of the territory by owners of 5021 North Altamont was by permission from the Snyder family. Wade McClure, who preceded Lance and Bridget Campbell in title, to the northern lot, agreed that the Snyders continued to use the disputed territory. He knew that the chain link fence did not constitute the boundary line.

Bridget Campbell's contravening declaration presents no facts that occurred before 2015. She testified as to her belief as to the location of the boundary line on

12

purchase of her home. Her belief in 2015 does not create a case of adverse possession or mutual recognition when the undisputed evidence shows no hostile takeover of the disputed territory by owners of 5021 North Altamont for at least ten years.

Lance and Bridget Campbell suggest that David and Mary Snyder and Wade McClure could not have known the location of the true boundary line before the 2015 survey performed by Rudy Kitzan. The Campbells further highlight that the condition of the properties at the time they purchased their home created a reasonable inference that previous owners treated the line established by the Snyders' chain link fence as the true boundary line between the properties. The Campbells underscore the facts that the Snyders' backyard was completely enclosed by the chain link fence, the fence prevented them from accessing the disputed land, and a wooden fence built by McClure in 2014, which extends beyond the boundary line, met the Snyders' chain link fence. We deem these suggestions to be mere argument and speculation that does not overcome a summary judgment motion. The nonmoving party in a summary judgment may not rely on speculation. *Specialty Asphalt & Construction, LLC v. Lincoln County*, 191 Wn.2d 182, 191, 421 P.3d 925 (2018).

Reasonable Attorney Fees

The trial court granted reasonable attorney fees and costs to David and Mary Snyder under RCW 7.28.083(3). The statute declares:

13

> The prevailing party *in an action* asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

(Emphasis added.)

Lance and Bridget Campbell contend the trial court erred when awarding reasonable attorney fees and costs to David and Mary Snyder under RCW 7.28.083(3) based on three related arguments and an unrelated fourth argument. First, the trial court, contrary to the statute, awarded fees and costs solely because the Snyders prevailed. Second, the court failed to consider all of the facts and circumstances in the litigation. Third, the facts do not justify any award being equitable and just. We address all of these three contentions together. Fourth, the trial court erroneously awarded prelitigation fees. Lance and Bridget Campbell do not otherwise challenge the reasonableness of the amount awarded.

When a statute authorizes attorney fees, an appellate court will uphold the award of fees, unless it finds that the trial court manifestly abused its discretion. *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 305, 430 P.3d 716 (2018). A trial court abuses its discretion when its "exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons." *Workman v. Klinkenberg*, 6 Wn. App. 2d at 305.

14

We disagree that the trial court granted reasonable attorney fees and costs to David and Mary Snyder solely because of their being the prevailing party. The court mentioned that RCW 7.28.083 allows the prevailing party an award of attorney fees. We also agree that the trial court once stated that the statute states the prevailing party is entitled to fees. But the trial court did not end its ruling there. The court added that Lance and Bridget Campbell's claim for adverse possession was "incredibly weak," a comment with which we agree. RP (Sept. 20, 2019) at 5. The Campbells lacked any evidence that a previous owner adversely possessed the disputed strip. The trial court concluded that an award to the Snyders was "equitable." RP (Sept. 20, 2019) at 5. The trial court's oral ruling evidences that the trial court knew it could award reasonable attorney fees and costs to David and Mary Snyder under RCW 7.28.083 only by finding an award "just and equitable." In its later ruling as to the amount of the fees, the trial court affirmed that it knew that an award was not mandatory.

The trial court awarded reasonable attorney fees and costs to David and Mary Snyder at the conclusion of the summary judgment hearing. Before granting fees, the trial court reviewed the evidence presented by both parties in support of and in opposition to the summary judgment motion. The court then concluded an award of fees and costs was equitable based on the lack of any evidence forwarded by Lance and Bridget Campbell to sustain an adverse possession suit. The trial court's thorough comments

15

confirm that it considered all of the facts and circumstances before awarding fees. Furthermore, based on the unreasonable legal position of the Campbells, the trial court did not abuse its discretion when determining an award to be equitable.

In their assignments of error, Lance and Bridget Campbell imply that the trial court erred by failing to enter formal and written findings of fact beyond its oral ruling as to the basis on which it ruled that an award is just and equitable. Nevertheless, the Campbells do not develop this contention in the argument of their brief, nor do they cite authority in support of the contention. Therefore, we do not address the question. We need not consider arguments that are not developed in the briefs and for which a party has not cited authority. *Bercier v. Kiga*, 127 Wn. App. 809, 824, 103 P.3d 232 (2004).

The Campbells contend that, even if attorney fees and costs were awardable under RCW 7.28.083(3), the trial court exceeded its authority when awarding fees for time spent on pre-suit settlement negotiations. The Campbells emphasize the phrase "in an action" found in the first sentence of RCW 7.28.083(3) to argue that the trial court may grant fees incurred only during the "action." We disagree.

The first sentence in RCW 7.28.083(3) declares:

> The prevailing party *in an action* asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees.

(Emphasis added.) The phrase "in an action" refers to the prevailing party, not to the breadth of time during which the court can award fees.

Lance and Bridget Campbell forward *Dice v. City of Montesano*, 131 Wn. App. 675, 128 P.3d 1253 (2006), when arguing that the trial court should not have awarded attorney fees incurred by David and Mary Snyder during pre-suit settlement negotiations. We agree with the Campbells that *Dice v. City of Montesano* supports their position, but we decline to follow the reasoning and ruling of our sister division in *Dice*.

In *Dice v. City of Montesano*, this court analyzed RCW 49.48.030, which governs attorney fees in actions for wages. The statute, like RCW 7.28.083, employs the phrase "in any action." RCW 49.48.030 states:

> *In any action* in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer.

(Emphasis added.)

Clint Dice, who recovered wages against his employer, argued on appeal that the trial court erroneously denied him attorney fees and costs incurred before litigation. The *Dice* court found the answer to Dice's assignment of error in the definition of "action" as being "a judicial proceeding in which one asserts a right or seeks redress for a wrong." *Dice v. City of Montesano*, 131 Wn. App. at 691-92 (quoting, *International Association of Fire Fighters v. City of Everett*, 146 Wn.2d 29, 41-42, 42 P.3d 1265 (2002). Based on

17

this definition, the court reasoned that the prevailing employee could only recover fees for attorney work judicial in nature. The court awarded Dice fees incurred by reason of the attorney investigating the factual basis of the lawsuit before filing the action because of its tie to the lawsuit. But the court denied fees for settlement negotiations occurring before suit.

The reasoning behind *Dice v. City of Montesano* would deny a prevailing party reasonable attorney fees and costs, incurred even after suit, for time spent by counsel in settlement negotiations. Assuming negotiations are not judicial in nature, the negotiations lack this character regardless of whether they occur pre-litigation or post-suit.

We note an important difference between RCW 49.48.030 and RCW 7.28.083(3). The former statute begins with the term "in any action" and reads thereafter that the court shall award reasonable attorney fees and costs to a person who recovers wages in the suit. The latter statute permits the court to award reasonable attorney fees and costs to a prevailing party "in an action" for adverse possession. RCW 49.48.030 ties the recovery of fees to the "action," while RCW 7.28.083(3) ties the term "action" to the prevailing party. We do not base our decision on this distinction alone, however.

We follow the majority, if not universal, rule that, if a statute allows a prevailing party in an action recovery of reasonable attorney fees and costs, recovery can extend to

work performed by the attorney before filing suit, assuming the statute does not read to the contrary. *Fadel v. El-Tobgy*, 245 Or. App. 696, 264 P.3d 150, 158 (2011); *Bowman v. Blair*, 889 P.2d 1069, 1075 (Alaska 1995). A Washington decision, *Morgan Brothers, Inc. v. Haskell Corp.*, 24 Wn. App. 773, 782, 604 P.2d 1294 (1979), did not involve a request for fees under a statute. Nevertheless, this court granted the prevailing party recovery of fees incurred during pre-litigation conferences when fees were recoverable because the proximate result of defendant's wrongful act exposed the prevailing party to litigation with others. Although the two foreign decisions did not necessarily include prelitigation settlement negotiations, presumably the prelitigation conferences, in *Morgan Brothers, Inc. v. Haskell Corp., Inc.*, involved settlement talk.

Good reason supports awarding reasonable attorney fees and costs for time spent in pretrial settlement negotiations. The law promotes settlement without assistance of the courts. *City of Seattle v. Blume*, 134 Wn.2d 243, 258, 947 P.2d 223 (1997). *Martin v. Johnson*, 141 Wn. App. 611, 622, 170 P.3d 1198 (2007). Pre-suit settlements reduce court congestion. As the trial court astutely noted, if the court does not permit recovery for time spent before suit in attempting to resolve disputes, parties are encouraged to file suit before engaging in settlement discussions.

We question whether the trial court should have denied David and Mary Snyder recovery for the cost of the survey of their property. The Snyders needed the survey to

prove their case in court. Their surveyor filed an affidavit in support of their summary judgment motion and attached the survey to assist in the motion. We do not address the denial of the survey cost, however, because the Snyders do not cross-appeal or assign error to the denial of the cost.

Attorney Fees on Appeal

David and Mary Snyder request an award of attorney fees and costs incurred during this appeal pursuant to RCW 7.28.083(3). RAP 18.1(a) declares:

> If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court.

RAP 18.1 allows for recovery of reasonable attorney fees and expenses on review, if applicable law grants such a right. *In re Rapid Settlements, Ltd's*, 189 Wn. App. 584, 617, 359 P.3d 823 (2015). When a prevailing party is awarded fees under RCW 7.28.083(3) and prevails on appeal, this court has awarded fees to the prevailing party. *See Workman v. Klinkenberg*, 6 Wn. App. 2d at 309.

We grant David and Mary Snyder an award of reasonable attorney fees and costs incurred on appeal.

CONCLUSION

We affirm the trial court's grant of summary judgment in favor of David and Mary Snyder in their quiet title action. We also affirm the trial court's grant of reasonable attorney fees and costs to the Snyders. We grant the Snyders reasonable attorney fees and costs incurred on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

I CONCUR:

_____
Pennell, C.J.

No.  37317-7-III

LAWRENCE-BERREY, J. (concurring) — I concur in all aspects of the majority

opinion except its discussion of prelitigation attorney fees.  I agree that prelitigation

attorney fees are awardable based on a fair construction of RCW 7.28.083(3) and that the

language of RCW 49.48.030 is distinguishable, as noted by the majority.  But I disagree

with what the majority claims is a near universal rule.

Citing one Washington and two foreign decisions, the majority asserts there is a

near universal rule that "if a statute allows a prevailing party in an action recovery of

reasonable attorney fees and costs, recovery can extend to work performed by the

attorney before filing suit."  Majority at 18-19.

I first note that *Morgan Brothers, Inc. v. Haskell Corp.*, 24 Wn. App. 773, 604

P.2d 1294 (1979), the Washington decision cited by the majority, does not stand for this

proposition.  *Morgan Brothers* limited its discussion of prelitigation attorney fees to fees

authorized by equity as consequential damages.  *Id.* at 782; *see also LK Operating, LLC

v. Collection Grp., LLC*, 181 Wn.2d 117, 123-25, 330 P.3d 190 (2014) (discussing when

equity allows recovery of attorney fees as consequential damages, the situation presented

in *Morgan Brothers*).  *Morgan Brothers* did not construe an attorney fee statute.

I next note that "[c]ourts decline to award attorney fees under a statute unless there is a clear expression of intent from the legislature authorizing such an award." *In re Marriage of Freeman*, 169 Wn.2d 664, 676, 239 P.3d 557 (2010). The legislature is capable of authorizing the recovery of attorney fees and is also capable of directing whether such fees include prelitigation fees. We should not permit such recovery in the absence of fair statutory construction, especially if the statutory language limits fees to those incurred "in any action." *See, e.g.*, *Dice v. City of Montesano*, 131 Wn. App. 675, 128 P.3d 1253 (2006). In short, the language of the statute controls.

I agree with the majority that there are good policy reasons to award prelitigation attorney fees. However, Washington courts follow the "American Rule": "'[A]ttorney fees are not available as *costs or damages* absent a contract, statute, or a recognized ground in equity.'" *LK Operating*, 181 Wn.2d at 123 (quoting *City of Seattle v. McCready*, 131 Wn.2d 266, 275, 931 P.2d 156 (1997)). To the extent the majority would award prelitigation attorney fees in the absence of statutory construction, I disagree.

_____
Lawrence-Berrey, J.

2